In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3789

Betty A. Stutler,

Plaintiff-Appellant,

v.

Illinois Department of Corrections
and Diane Rockett,

Defendants-Appellees.

Appeal from the United States District Court
for the Central District of Illinois, Peoria Division.
No. 97 C 1404--Michael M. Mihm, Judge.

Argued January 17, 2001--Decided August 27, 2001


  Before Easterbrook, Evans, and Williams,
Circuit Judges.

  Williams, Circuit Judge. Betty A.
Stutler, an employee of the Illinois
Department of Corrections ("IDOC") filed
this lawsuit against IDOC for
retaliation, race and age discrimination,
and against her supervisor, Diane
Rockett, for a violation of 42 U.S.C.
sec.1983./1 The district court granted
summary judgment in favor of the
defendants. Stutler appeals only the
dismissal of her retaliation claim
against IDOC. Because we find that no
reasonable jury could find that Stutler
suffered an adverse employment action, we
affirm.

I.  BACKGROUND

  The gravamen of Stutler's claim is that
after she complained of Rockett's conduct
in May 1996 and Rockett received a three-
day suspension in July 1996, Rockett
engaged in retaliatory behavior that was
not adequately remedied by IDOC. To
analyze Stutler's claim, we need to set
forth the events that led to the three-
day suspension and the events that
transpired after.

  Stutler began working for IDOC in 1988
as an office associate in the clinical

services department, where she performed secretarial duties for Diane Rockett. The two enjoyed a friendship that extended beyond their employment until late 1995 when Stutler complained to Assistant Warden Wanda Bass that Rockett asked her to do personal favors. When Rockett learned of Stutler's complaint, she became angry, and threw things and screamed at Stutler. The relationship further deteriorated in the spring of 1996 as memorialized in a barrage of incident reports written by Stutler. As many of the reports complained of conduct not protected by Title VII, we will discuss only the ones relevant to this appeal./2 See Hamner v. St. Vincent Hosp. & Health Care Ctr., Inc., 224 F.3d 701, 707 (7th Cir. 2000) (holding that the conduct complained of must be an unlawful employment practice under Title VII).

In April and May 1996, Stutler filed three incident reports complaining that: 1) Rockett stated that Stutler was "too fucking old to run" to catch an incoming phone call; 2) Rockett told Stutler to "think about quitting because she was never satisfied," and that she resented Stutler for going to her boss and telling lies about her; and 3) in response to Rockett's belief that Stutler complained that she inappropriately ate food with an inmate in her office, Rockett told the inmate "to be careful of [Stutler]--that [Stutler] was out to get him and that you know you have to be careful around these white women."/3 IDOC investigated the first two reports and gave Rockett a written reprimand pursuant to its progressive discipline policy. It also appears (although the record is somewhat unclear) that the third report was referred to the affirmative action office, which had the responsibility of investigating complaints of racial discrimination. Stutler contends, and IDOC concedes, that she engaged in Title VII protected activity when she reported the third incident.

The following month, Stutler wrote a letter to Warden Gramley complaining that Rockett was dysfunctional and too demanding. On that same day, Stutler filed another incident report complaining that Rockett told her that she was being transferred out of the clinical services department because she had filed a

"grievance." There is no evidence, however, that Stutler was transferred, but it appears that Rockett had been instructed not to tell Stutler of the move. This incident resulted in Rockett receiving a one-day suspension.

Around this time, the affirmative action administrator completed her investigation into Rockett's conduct. The investigation revealed that Rockett wore Stutler's shoes, borrowed money from Stutler, yelled at her staff and believed that her staff had formed a conspiracy against her. On July 17, 1996, Warden Gramley suspended Rockett for three days.

Nine days later, Stutler saw an e-mail that Rockett sent to the Director of IDOC characterizing Stutler's behavior as "bizarre" and stating that "it would be best if [she and Stutler] did not work together." A few months later, Rockett told Stutler to collect her things so that she could move to a reception area outside Rockett's office that was not yet equipped with proper lighting, electricity, computer hook-ups or phone jacks. Stutler, however, was not moved. The following month, Rockett asked Stutler to return the key to her office because she believed items were missing. Rockett informed Stutler that she could continue having access to her office, but only when it was already unlocked.

Stutler wrote another letter to Warden Gramley in March 1997, informing him that Rockett was verbally abusing her. Warden Gramley thought that one solution to the problem might be to temporarily relocate Stutler out of physical contact with Rockett, so he transferred Stutler to the business office, where she stayed for approximately two months. Stutler asked to return to the clinical services department because, although she liked the atmosphere in the business office, she did not like the tasks she was required to perform, and she "loved" her job in clinical services.

After she returned to the clinical services department in May 1997, Stutler asserts that Rockett verbally abused her by repeatedly telling her "she had to go" up until the time she filed this lawsuit in November 1997. Stutler also asserts that in March 1998 Rockett told her that she could not forgive her. The district

court granted summary judgment in favor of the defendants on all counts, and Stutler appeals only the dismissal of her retaliation claim against IDOC.

## II.  ANALYSIS

We review a grant of summary judgment de novo, drawing all inferences in the light most favorable to the non-moving party. Essex v. United Parcel Serv., Inc., 111 F.3d 1304, 1308 (7th Cir. 1997). Stutler argues on appeal that the district court erred in dismissing her retaliation claim against IDOC because: 1) her transfer to the business office "in itself was retaliation"; and 2) Rockett's continued harassment after she reported Rockett for making a racial comment in May 1996 constituted an adverse employment action, and IDOC failed to adequately remedy the situation. We do not find Stutler's arguments persuasive and affirm the judgment of the district court.

We begin our analysis with a discussion of Title VII and the standards we must apply. Title VII makes it unlawful for an employer to retaliate against an employee who "has opposed any practice made an unlawful employment practice by this subchapter, or [who] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter." 42 U.S.C. sec. 2000e-3(a). When a plaintiff does not have direct evidence of retaliation to defeat a motion for summary judgment, she can proceed under the indirect, burden-shifting method of proof. Smart v. Ball State Univ., 89 F.3d 437, 439 (7th Cir. 1996) (citing McDonnell Douglas v. Green Corp., 411 U.S. 792, 802 (1973)). Under that method, the plaintiff must first establish a prima facie case. Id. After doing so, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Id. If the employer carries this burden, the plaintiff must produce evidence that would, if believed by a trier of fact, show that the true reason for the employment action was discriminatory--in this case, done in retaliation for Stutler's engaging in protected conduct. Id. "Although intermediate evidentiary burdens shift back and forth under this framework, 'the ultimate burden of persuading the trier

of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000) (quoting Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

The district court dismissed Stutler's claim because it found that she could not establish a prima facie case. In order to establish a prima facie case of retaliation, Stutler must demonstrate that: 1) she engaged in a protectedactivity under Title VII; 2) she suffered an adverse employment action; and 3) there was a causal link between the two. Id. at 440. Both parties agree that Stutler satisfied the first element, engaging in a protected activity, when she complained of Rockett's racial comment in May 1996. Whether Stutler can satisfy the last two elements of the prima facie case are at the center of the dispute, and strike the fatal blow to Stutler's appeal.

A. Lateral Transfer

The district court properly found that Stutler's lateral transfer to the business office in March 1997 was not an adverse employment action. We have repeatedly held that a lateral transfer without a loss in benefits does not constitute an adverse employment action. Place v. Abbott Lab., Inc., 215 F.3d 803, 810 (7th Cir. 2000); Hill v. Am. Gen. Fin., Inc., 218 F.3d 639, 645 (7th Cir. 2000); Williams v. Bristol-Myers Squibb Co., 85 F.3d 270, 274 (7th Cir. 1996). The fact that Stutler did not like the new position is irrelevant when there is no evidence that the transfer decreased her responsibilities or benefits in any way. See, e.g., Place, 215 F.3d at 810 ("[B]eing shifted to an essentially equivalent job that [the plaintiff] did not happen to like as much does not a Title VII claim create.").

Even if the transfer could rise to the level of an adverse employment action, summary judgment in favor of IDOC was still appropriate because no reasonable jury could find that Stutler was transferred in retaliation for complaining of Rockett's conduct. Warden Gramley stated that he temporarily

reassigned Stutler to the business office because he thought that relocating Stutler out of physical contact with Rockett might be a solution to the problem./4 Although IDOC's decision to transfer Stutler may not have been the wisest, it was the tension that resulted from the collapse of Stutler and Rockett's friendship that led to the transfer, not retaliation. See id. at 811 (concluding that an employer's decision to split up two workers whose soured romance affected the company's progress was not retaliatory). Accordingly, the district court properly found that no reasonable jury could conclude that Stutler was transferred to the business office in retaliation for engaging in Title VII protected activity.

B.  Retaliatory Harassment

Stutler also asserts that the "continued" harassment she endured after reporting Rockett in May 1996 constituted an adverse employment action. The district court failed to address this argument below, but because our review is de novo, we will.

We have broadly defined an adverse employment action in this circuit. Smart, 89 F.3d at 441. It is not limited solely to loss or reduction of pay or monetary benefits, but can encompass other forms of adversity. Id. Nevertheless, "not everything that makes an employee unhappy is an actionable adverse action." Id. Negative performance reviews, a change in job title, an increased travel distance to work, do not by themselves qualify. Hill, 218 F.3d at 645. Neither does the loss of a telephone or cubicle. Place, 215 F.3d at 810. To be actionable, there must be a "'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Bell v. Envtl. Prot. Agency, 232 F.3d 546, 555 (7th Cir. 2000) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)). In other words, the adverse action must materially alter the terms and conditions of employment. Rabinovitz v. Pena, 89 F.3d 482, 488 (7th Cir. 1996).

Retaliatory harassment by co-workers or

a supervisor can rise to this level if it is severe enough to cause a significant change in the plaintiff's employment status. For example, in Knox v. Indiana, 93 F.3d 1327 (7th Cir. 1996), we upheld a jury verdict in favor of a plaintiff whose co-workers embarked on a campaign of vicious gossip and profanity aimed at making "her life hell" in response to her complaints that a supervisor sexually harassed her. We reasoned that retaliation could come in many forms and there was sufficient evidence to support the jury's verdict that the plaintiff's co-workers engaged in a campaign of retaliatory harassment and the employer failed to correct it. Id. at 1334-35. But, in Parkins v. Civil Constructors of Illinois, Inc., 163 F.3d 1027 (7th Cir. 1998), we found that ostracism by co-workers that did not result in material harm to the plaintiff was not enough to constitute an adverse employment action. Id. at 1039.

Similarly, in Bell, we found that conduct by a supervisor/5 was not sufficiently severe to be actionable. In Bell, the supervisor failed to greet or speak to the plaintiff and cancelled a meeting that the plaintiff had scheduled, apparently in response to the plaintiff's sex discrimination complaint. 232 F.3d at 555. We found these matters trivial. Id. Likewise, in Hill, we concluded that a supervisor's rummaging through the plaintiff's desk drawers and waste can and listening to the plaintiff's telephone calls did not rise to the level of actionable retaliation. 218 F.3d at 645.

Taking the facts in the light most favorable to Stutler, we conclude that no reasonable jury could find that the conduct endured by Stutler was severe enough to rise to the level of an adverse employment action. Rockett's conduct after Stutler reported her in May 1996 consisted of: 1) sending an e-mail to the Director of IDOC in July 1996 characterizing Stutler's behavior as "bizarre" and stating that "it would be best if [she and Stutler] did not work together," 2) telling Stutler repeatedly that "she had to go," 3) telling Stutler in September 1996 to collect her things so that she could move to an unfinished reception area outside Rockett's office, 4) asking Stutler to return the key to

her office in October 1996, and 5) telling Stutler in March 1998 (almost one year after Stutler asked to be returned to the clinical services department) that she could not forgive her for filing the lawsuit.

Although we in no way condone Rockett's conduct or believe that she acted appropriately as a supervisor, we find her behavior too petty and tepid to constitute a material change in the terms and conditions of Stutler's employment. Rockett's threats never materialized or resulted in any material harm to Stutler--there is no evidence that Stutler was transferred in response to Rockett's July e-mail nor that Stutler was moved to the unfinished area outside Rockett's office. There is also no evidence that Stutler was unable to perform her job duties after Rockett asked her to return the key to Rockett's office. Additionally, Stutler's own conduct in requesting to return to the clinical services department because she "loved" her job there cuts against a finding that Rockett's behavior was anything more than "a mere inconvenience." Rabinovitz, 89 F.3d at 488. We have no doubt that the environment was unpleasant, but none of the conduct complained of constituted the material harm necessary for a Title VII retaliation claim.

Even if Stutler had suffered an adverse employment action, we doubt whether Stutler could establish a causal link between the protected activity and Rockett's conduct. For one, the conduct did not increase or "ratchet up" after Stutler reported Rockett in May 1996 for the racial comment. See Johnson v. Nordstrom, Inc. et al., ___ F.3d ___, No. 00-3827, 2001 WL 818874, at *5 (7th Cir. Jul. 20, 2001) (doubting existence of causal connection when "there was 'no ratcheting up of the harassment' after the complaint was filed"). Rockett treated Stutler just as poorly before Stutler reported her for making the racial comment as she did afterward. And, most of Rockett's behavior appeared to be in response to the barrage of incident reports that Stutler filed concerning her belief that Rockett was not following office procedures (i.e., by allowing the files to be moved to another area and by using the telephone to make personal calls), and in response to Stutler's

complaint to Assistant Warden Bass that Rockett had her do personal favors, which are not protected activities under Title VII.

Because we find the conduct that Stutler endured was not sufficiently severe to rise to the level of an adverse employment action (and probably not causally connected to protected activity), we need not determine whether IDOC was vicariously liable for Rockett's conduct or if it could establish the affirmative defense set forth in Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998), and Faragher v. City of Boca Raton, 524 U.S. 775 (1998). See Knox, 93 F.3d at 1334 (holding that "there is nothing to indicate that the principle of employer responsibility does not extend equally to other Title VII claims, such as a claim of unlawful retaliation"). Therefore, we do not consider whether IDOC's progressive discipline against Rockett was adequate or whether its decision to transfer Stutler was a reasonable response to the situation.

III. CONCLUSION

Because Stutler has failed to demonstrate that she suffered an adverse employment action, her retaliation claim fails as a matter of law. Therefore, the judgment of the district court is AFFIRMED.

FOOTNOTES

/1 Stutler's complaint lists only two counts against IDOC--Count I (race discrimination) and Count II (age discrimination). Because each count also contained allegations of retaliation, the district court construed Stutler's complaint as if it stated three counts against IDOC. We agree with the district court's construction of the complaint and will treat Stutler's complaint as if it asserted a retaliation claim against IDOC.

/2 The majority of the incident reports written by Stutler consisted of her perception that Rockett was not strictly following office procedures (i.e., Stutler thought Rockett should not have allowed a file clerk to move files to another area of the office, allowed an inmate to help sort files that may have contained confidential information, used the telephone to make personal calls while at work, etc.).

/3 Stutler is white, and Rockett is bi-racial.

/4 By March 1997, Stutler's incident reports were all geared toward her beliefs that Rockett was not following office procedures or acting professionally, i.e., by using the telephone to make personal calls or allowing the files to be reviewed by an inmate. Because these are not prohibited by Title VII, and therefore, reporting them is not protected activity, the cases cited by Stutler admonishing the employer for transferring the victim instead of the harasser are distinguishable.

/5 We refer to the actor in Bell as a supervisor because he was a section chief who was a member of a panel that made the hiring decisions.