**Tonya L. HAMILTON, Plaintiff,**

v.

**RDI/CAESARS RIVERBOAT CASINO, LLC, Defendant.**

**No. NA01–74–C B/S.**

United States District Court, S.D. Indiana, New Albany Division.

Jan. 14, 2002.

---

W. Brady Miller, Marks & Miller Psc, Louisville, KY, for plaintiff.

Susan Lonowski, Frost Brown Todd LLC, Louisville, KY, Gene F. Price, Frost Brown Todd LLC, New Albany, IN, for defendant.

## ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BARKER, Judge.

### I. *Introduction.*

This is an employment discrimination case brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e as amended, 42 U.S.C. § 1981a. The plaintiff, Tonya Hamilton, alleges that her former employer, RDI, tolerated or condoned Ms. Hamilton's male co-employees subjecting her to harassment based on her sex, retaliated against her because of her complaints of the harassment, and then constructively discharged her by making her work life intolerable.

The case is before the court on defendant's two motions for summary judgment. One motion seeks to dismiss Ms. Hamilton's complaint on timeliness grounds in that she failed to file it within ninety days after the EEOC issued her Right to Sue Notice. The second goes to the substance of Ms. Hamilton's claims. It argues that Ms. Hamilton has presented legally insufficient evidence to raise a genuine issue of material fact as to any of her claims and that it is entitled to judgment as a matter of law. Although defendant filed these motions separately, we consolidate them for disposition. For the following reasons we DENY defendant's motion to dismiss for lack of timeliness, but GRANT defendant's motion for summary judgment on the merits.

## II. *Statement of Facts.*

Pursuant to Local Rule 56.1, the defendant submitted a statement of facts. Contrary to the Rule, the plaintiff did not address defendant's factual statements. Nor did she set forth additional facts, supported by evidence, to advance her own case. Since we have an independent obligation under Fed.R.Civ.P. 56 to determine whether there are genuine issues of material fact for trial and whether defendant is entitled to judgment as a matter of law, we decline defendant's invitation simply to deem all of its fact statements to be admitted. We do, however, accept as true defendant's statements which are supported by evidence and are otherwise admissible.

Tonya Hamilton began working in RDI's maintenance department as a painter in January 2000. She alleges that on February 14 she was sexually harassed by male co-workers. According to her EEOC charge and her statement to the company's human resources department, she went to the engine room of RDI's river boat as she routinely did at the start of her shift. There she met three male co-employees: Assistant Engineer, Carroll Bennett; Bridge Mate, Kevin Mullen; and Chief Engineer, Pete Hutson. The three were having a discussion about turtle vomit. Def. Facts ¶¶ 1–5.

Mr. Hutson began talking about a couple in bed and mud on a woman's vagina. Sitting in front of a computer screen, Mr. Bennett turned to Ms. Hamilton and asked her whether she had ever left a job because of sexual harassment. Ms. Hamilton replied that she had not. Mr. Bennett accessed a computer and some text appeared on the screen. He then moved away from the computer. Ms. Hamilton began reading the material on the screen. She quit reading when she got to the word vagina. Def. Facts ¶¶ 5–6.

Ms. Hamilton found the incident offensive. She complained about it to her supervisor, Vernon Smith, who told her that he would report the incident to Port Engineer Robert Brinck and get back to her after that. Ms. Hamilton provided the company with a typewritten, signed statement. In it, she stated that she did not want to return to the engine room and that Mr. Smith had to get her tools from the engine room because she did not want to be in the company of the three individuals. Def. Facts ¶ 7–9. The next day, February 15, Mr. Smith told Ms. Hamilton that she should not go into the engine room because the three men did not want her there. Def. Facts ¶ 10.

On February 16, Ms. Hamilton met with Sherry LeClair, the company's Vice President for Human Resources. She told Ms. LeClair that the men didn't want her to go into the engine room. Ms. LeClair told her that she could go back into the engine room as usual. Def. Facts ¶ 11. Ms. Hamilton acknowledges that RDI "investigated the matter and took some type of administrative action." Def. Facts ¶ 12; Case Management Plan, ¶¶ II–A, III. Ms.

Hamilton did not complain of harassment thereafter. Def. Facts ¶ 12.

After having complained to human resources, Messrs. Mullen, Bennett, and Hutson stopped speaking to Ms. Hamilton and ignored her. Def. Facts ¶ 13. They turned away from her and responded to her greetings with silence. They gave her dirty looks. They spoke to her only when required to do so by the job and then in a hostile or combative tone. They erected a sign stating "MEN AT WORK" in an area she had to pass through daily. Pl. Declar. Ms. Hamilton complained to management about the men's hostility, but was told there was nothing that could be done about it. After the conduct persisted for about a month, Ms. Hamilton quit her employment on March 15, 2001. Def. Facts ¶ 14.

## III. *Discussion.*

### A. *The Standard on Summary Judgment.*

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the particular issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Eiland v. Trinity Hosp.,* 150 F.3d 747, 750 (7th Cir.1998).

On a motion for summary judgment, the burden rests on the moving party to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986). After the moving party demonstrates the absence of a genuine issue for trial, the responsibility shifts to the non-movant to "go beyond the pleadings" and point to evidence of a genuine factual dispute precluding summary judgment. *Id.* at 322–23, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265. "If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in her favor on a material question, then the court must enter summary judgment against her." *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex,* 477 U.S. at 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265; *Anderson,* 477 U.S. at 249–52, 106 S.Ct. 2505, 91 L.Ed.2d 202).

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge,* 24 F.3d at 920. Therefore, in considering a motion for summary judgment, we draw all reasonable inferences in favor of the non-movant. *Venters v. City of Delphi,* 123 F.3d 956, 962 (7th Cir.1997). If genuine doubts remain, and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. See *Shields Enters., Inc. v. First Chicago Corp.,* 975 F.2d 1290, 1294 (7th Cir.1992); *Wolf v. City of Fitchburg,* 870 F.2d 1327, 1330 (7th Cir.1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish her case, summary judgment is not only appropriate, but mandated. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548, 91 L.Ed.2d 265; *Waldridge,* 24 F.3d at 920.

### B. *Preliminary Issues.*

#### 1. *Defendant's Statute of Limitations Claim.*

In a separately-filed motion for summary judgment, Caesar's asks us to dis-

miss Ms. Hamilton's complaint because she failed to file her complaint within ninety days after the EEOC issued her Right to Sue Notice (RTS). For the following reasons, we DENY Caesar's motion.

The only facts pertinent to Caesar's statute of limitations argument are those concerning when Ms. Hamilton received her Right to Sue Notice (RTS) and when she filed her complaint. The EEOC issued the RTS on November 1, 2000. Ms. Hamilton filed her complaint on February 2, 2001. Ms. Hamilton concedes that she filed her complaint 93 days after the EEOC *mailed* her RTS, but she argues that the three-day delay was justified because the EEOC sent her RTS to the wrong address through no fault of hers.

■ Title VII provides that an aggrieved person must bring a lawsuit within ninety days after actual receipt of her RTS Notice. *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 354, 103 S.Ct. 2392, 2398, 76 L.Ed.2d 628 (1983); *Threadgill v. Moore U.S.A., Inc.*, 269 F.3d 848, 850 (7th Cir.2001); *Saxton v. American Tel. & Tel. Co.*, 10 F.3d 526, 532. n. 11 (7th Cir.1993). An exception to the actual notice rule arises when the individual fails to receive notice through her own fault. *Houston v. Sidley & Austin*, 185 F.3d 837, 839 (7th Cir.1999). An individual who has filed with the EEOC has an affirmative obligation to inform the EEOC of any change in address. 29 C.F.R. § 1601.7(b); *St. Louis v. Alverno College*, 744 F.2d 1314 (7th Cir.1984). And perhaps the most common reason for attributing fault to the charging party when she does not receive actual notice is that she failed to inform the EEOC of a change of address.

That is not the case here. The parties agree that Ms. Hamilton *did* provide notice of her change of address to the EEOC and the EEOC investigator dutifully noted the change. Ms. Hamilton says that she gave the EEOC her father's long-standing address when she went to live with him: 112 North 28th Street, Louisville, Kentucky 40208. Hamilton Declar. In a handwritten entry of September 29, 2000, EEOC Investigator Ralph Calvin noted the change as: 12 North 28th St., 40208. The EEOC sent the RTS to 12 North 28th Street and Ms. Hamilton says that she did not receive it until she made inquiry months later.

On summary judgment, Ms. Hamilton is entitled to all reasonable inferences from the record. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Among such reasonable inferences is that Investigator Calvin noted down the wrong address. Surely Ms. Hamilton had no incentive to provide EEOC with the incorrect address after taking pains to notify Mr. Calvin of the change. In addition, she stayed well enough apprised of the proceedings to discover the error and still file her complaint within three days after actually receiving the Notice.

Since the limitations period begins when the plaintiff *receives* the RTS, we look for persuasive evidence that Ms. Hamilton actually received the notice more than ninety days before her complaint was filed or that Ms. Hamilton was at fault for not receiving it timely. RDI bears the initial burden of persuasion as to its affirmative defense. *Venters v. City of Delphi*, 123 F.3d 956, 967 (7th Cir.1997); *Law v. Medco Research, Inc.*, 113 F.3d 781, (7th Cir.1997).

The only facts RDI offers are: (1) the EEOC *mailed* the RTS on November 1, 2000; (2) it mailed the RTS to 12 North 28th Street; and (3) Ms. Hamilton did not file her complaint until February 2, 2001. These facts do not establish that Ms. Hamilton gave the 12 North 28th Street address or that she actually received the

RTS more than ninety days before she filed her lawsuit. They certainly do not establish that Ms. Hamilton was at fault for failing to receive actual notice. There is at the very least a genuine issue of material fact as to these issues. Accordingly, we may not find as a matter of law that Ms. Hamilton actually received her RTS more than 90 days before she filed her complaint.[1] Defendant's motion for summary judgment on statute of limitations grounds is DENIED.

### 2. Plaintiff's Argument that a Ruling on Summary Judgment would be Premature.

■ Ms. Hamilton argues that any ruling on Caesar's motion for summary judgment on the merits would be premature because discovery does not close until January 14, 2002 and little discovery had been undertaken before Caesar filed its motion on the merits. We are, ordinarily, sympathetic to such an argument because the defendant tends to control the timing of dispositive motions. The defendant decides *whether* to file a summary judgment motion, and, within the limits of any deadline expressed in the Case Management Plan, *when* to file it. On a rare occasion, such as this one, the defendant conducts little or no discovery and files its motion quite early in the process, so that the plaintiff is caught unawares and has to play catch up on discovery.

Our sympathy, however, ends there. First, plaintiff has focused on only one provision of the Case Management Plan, the provision creating a January 14, 2002 deadline for discovery. In view of that deadline, defendant's filing on September 20, 2001 was unusually early. But the Case Management Plan also provides that motions for summary judgment shall be filed "as soon as practicable" and sets a November 23, 2001 deadline for them.

Second, the rules prescribe two ways out of plaintiff's dilemma if she had wished to conduct discovery (or additional discovery) before opposing a motion for summary judgment. One method is to have timely asked to modify the Case Management Plan. Another is provided by Fed.R.Civ.P. 56(f), which permits the non-moving party to file an affidavit setting forth reasons for letting it conduct discovery before responding to the motion for summary judgment. Plaintiff not only did not asked for *additional* time in which *to conduct* discovery; she filed a motion asking for the *opposite:* she requested a *stay* of discovery pending disposition of the two motions for summary judgment. We granted plaintiff's *motion to stay discovery.* We find plaintiff's argument that a ruling on summary judgment would be premature because she needs to conduct discovery incompatible with her request to stay discovery.

Finally, plaintiff filed a sworn declaration in support of her opposition to summary judgment. Inexplicably, she failed to use it as an opportunity to rebut several of defendant's key factual assertions.

For these reasons, we reject plaintiff's argument that a ruling on summary judgment is premature and proceed to defendant's motion on the merits.

### C. Ms. Hamilton's Substantive Claims.

Ms. Hamilton's claims build upon one another in three stages. She alleges that she was the victim of co-employee sexual harassment about which she complained to management; she was then the object of retaliation at the hands of the co-employees about whom she complained; since

---

1. In view of our holding, we need not address Ms. Hamilton's alternative argument that, un- der the circumstances, she is entitled to have the statute of limitations tolled.

management could not or would not stop the retaliatory misconduct, she was then forced to resign her position. Like any building, this one requires a solid foundation. Like a house of cards, however, the structure of Ms. Hamilton's case can't bear its own weight.

### 1. Ms. Hamilton's Sex Harassment Claim.

 Title VII prohibits employers from discriminating against employees on the basis of their gender. Its prohibitions include creating, condoning, or tolerating a hostile work environment. A "hostile" work environment is one that is "permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Shanoff v. Illinois Dept. of Human Services,* 258 F.3d 696, 704 (7th Cir.2001) (internal citations omitted); *Adusumilli,* 164 F.3d at 361. The issue of whether the work environment is hostile "turns on whether the alleged harassment occurred because of the sex of the complainant." *Haugerud v. Amery School District,* 259 F.3d 678, 692 (7th Cir.2001). In other words, the question is whether the employee was " 'exposed to disadvantageous terms or conditions of employment to which members of the other sex [were] not exposed.'" *Id. quoting Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)

 Proof of hostile environment is two pronged. In order to prevail, the plaintiff must present evidence sufficient to raise a reasonable inference that she *subjectively* experienced the environment to be abusive; she must also show, *objectively,* that a reasonable person in her position also would have perceived it to be hostile. *Haugerud,* 259 F.3d at 693; *Adu-*

*sumilli,* 164 F.3d at 361. In order to determine whether the work environment is *objectively* hostile, we consider all of the circumstances, including "the frequency of the discriminatory conduct, its severity, whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance." *Haugerud,* 259 F.3d at 693.

Since the Supreme Court's clarifying decisions in 1998, analysis of employer liability for hostile environment harassment has depended upon whether the harassment was committed by a supervisor or by a co-worker and whether or not the harassment culminated in a tangible employment action. *Burlington Industries v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

 Here, it is unchallenged that the three alleged harassers were Ms. Hamilton's co-employees. None had supervisory authority over her. Where, as here, the alleged harassment was committed by co-employees and (as we discuss momentarily) the alleged harassment did not eventuate in an adverse employment action, the employer is not subject to strict liability. Instead, Ms. Hamilton must show that RDI was negligent in order to hold it liable for co-worker harassment. *Adusumilli v. City of Chicago,* 164 F.3d 353, 361 (7th Cir.1998), *cert. denied,* 528 U.S. 988, 120 S.Ct. 450, 145 L.Ed.2d 367 (1999). In other words, an employer is liable where it knows or should know of the harassment and fails to take prompt remedial action. *Savino v. C.P. Hall Co.,* 199 F.3d 925, 933–934 (7th Cir.1999).

With these legal criteria in mind, we resolve Ms. Hayden's harassment claim on two grounds: first, the co-employees' conduct did not rise to the level of actionable

harassment; and second, upon Ms. Hamilton's complaining, RDI took prompt remedial action.

On the evidence she has presented, Ms. Hamilton's claim of harassment is barely intelligible. Three co-employees were present when she entered the room. Mr. Hutson was saying something to someone—we don't know whom—about a vagina with mud on it. Mr. Bennett asked her whether she had ever left a job because of sex harassment. Mr. Bennett pulled something up on his computer screen and moved away from the computer. Ms. Hamilton read what was on the screen and quit when she got to the word vagina. Even assuming that the incident occurred exactly as Ms. Hamilton says, all we can infer from the evidence is that she came in on a conversation among three co-workers, took offense at what they were discussing, and left.

Since she complained to management, we will assume that Ms. Hamilton subjectively perceived this single incident to be abusive and hostile. Objectively, however, the incidents are so innocuous as to fall below the threshold of what the law regards as hostile environment sex harassment. The Seventh Circuit has affirmed summary judgment in many cases involving far more egregious misconduct. In *Baskerville v. Culligan International Co.*, 50 F.3d 428, 431 (7th Cir.1995), for example, the court overturned a verdict in favor of the plaintiff noting that the defendant "never said anything to her that could not be repeated on primetime television" and found as a matter of law that the "handful of comments" alleged to have occurred did not give rise to liability under Title VII. *See, e.g., Adusumilli v. City of Chicago*, 164 F.3d 353, 361–362 (7th Cir.1998), *cert. denied*, 528 U.S. 988, 120 S.Ct. 450, 145 L.Ed.2d 367 (1999) (touchings, including a poke to plaintiff's buttocks); *Saxton v. AT & T Company*, 10 F.3d 526, 533–34 (7th Cir.1993) (inappropriate remarks and impermissible touching); *Weiss v. Coca–Cola Bottling Co.*, 990 F.2d 333, 337 (7th Cir. 1993) (unwanted touchings and attempts to kiss). Even if Messrs. Hutson, Bennet, or Mullen had been Ms. Hamilton's supervisor, we would be hard pressed to disagree with the finding in *Stutler v. Illinois Department of Corrections*, 263 F.3d 698, 704 (7th Cir.2001), that the supervisor's "behavior [was] too petty and tepid to constitute a material change in the terms and conditions of [Ms. Hamilton's] employment." In other words, as the Seventh Circuit has repeatedly observed: "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Haugerud*, 259 F.3d at 693 (piecing together several quotations).

Next, even if we assume for purposes of defendant's motion that the incident rose to the level of actionable harassment, Ms. Hamilton admits that RDI "investigated the matter and took some type of administrative action." Def. Facts ¶ 12; Case Management Plan, ¶¶ II–A, III. Doing so satisfied its obligation under Title VII. See *Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 811 (7th Cir. 2001); *McKenzie v. Illinois Dept. of Transp.*, 92 F.3d 473, 480 (7th Cir.1996). Although we do not know precisely what "administrative" action RDI took, Ms. Hamilton did not complain again about sex harassment thereafter. She presents no evidence from which one might infer the employer's remedial action was not effective.

In conclusion, we GRANT defendant's motion for summary judgment with respect to Ms. Hamilton's sexual harassment claim because the conduct of which she complains did not rise to the level of ac-

tionable harassment, and because, even if it had, RDI took prompt remedial action.

### 2. Ms. Hamilton's Retaliation Claim.

■ Ms. Hayden's retaliation and constructive discharge claims are intertwined. She alleges that, after she complained about the harassment to human resources, Messrs. Mullen, Bennett, and Hutson stopped speaking to her and ignored her. Def. Facts ¶ 13. As Ms. Hamilton noted in her declaration, they turned away from her and responded to her greetings with silence. They gave her dirty looks. They spoke to her only when required to do so by the job and then in a hostile or combative tone. They erected a sign stating "MEN AT WORK" in an area she had to pass through daily. Ms. Hamilton complained to management about the men's hostility, but was told there was nothing that could be done about it. After the conduct persisted for about a month, Ms. Hamilton quit her employment on March 15, 2001. Def. Facts ¶ 14. In sum, Ms. Hamilton alleges that her co-employees gave her the silent treatment and ostracized her in retaliation for having complained about them and that their conduct made her work life intolerable, compelling her to resign.

■ In order to prevail on her retaliation claim, Ms. Hayden must show that: (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there is a causal relationship between the protected expression and the adverse action. *Maarouf v. Walker Manufacturing Co.*, 210 F.3d 750, 755 (7th Cir.2000); *Alexander v. Gerhardt Enterprises Inc.*, 40 F.3d 187, 195 (7th Cir.1994).

■ As a threshold matter, Title VII prohibits an employer from retaliating against an individual who "participates" in statutorily-protected conduct or who "opposes" conduct made unlawful by the statute. 42 U.S.C. §§ 2000e–3(a). A plaintiff does not engage in conduct protected by Title VII merely by complaining about conduct she refers to as "sexual harassment." Her complaint must be based on a reasonable belief that the conduct about which she complained was unlawful. *Clark County School District v. Breeden*, 532 U.S. 268, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). This is not to say that, in order to support a claim of retaliation, the plaintiff has to be *correct* in believing that she had been the victim of harassment. Such a requirement would create a chilling effect on workplace harassment complaints. But in view of the Supreme Court's decision in *Breeden*, it is questionable whether Ms. Hamilton engaged in conduct protected by Title VII because it is questionable whether she reasonably believed that she had been the victim of sexual harassment.[2] Indeed, it is questionable under the facts presented here whether any reasonable woman [3] could have concluded that the co-employees' con-

**2.** *Breeden* does not change the standard in the Seventh Circuit, which has for a decade required a showing that the plaintiff had "a sincere and reasonable belief" that the conduct was unlawful. *Hunt–Golliday v. Metropolitan Water Reclamation District of Greater Chicago*, 104 F.3d 1004, 1014 (7th Cir.1997); *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1314 (7th Cir.1989). By focusing on "reasonableness," however, *Breeden* powerfully implies that a "sincere" or "honest" belief is not enough.

**3.** We use the "reasonable woman" standard as shorthand to indicate a reasonable employee, similarly situated to Ms. Hamilton. *See, e.g., Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 20, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993); *Doe by Doe v. City of Belleville, Ill.*, 119 F.3d 563, 587 (7th Cir.1997), *vacated on other grounds*, 523 U.S. 1001, 118 S.Ct. 1183, 140 L.Ed.2d 313 (1998).

duct rose to the level of sexual harassment.

Nevertheless, we will assume for purposes of RDI's summary judgment motion that Ms. Hamilton engaged in conduct protected by Title VII by complaining about her co-employees' conduct. Even so, her claim must fail because she has presented legally insufficient evidence to support the finding that RDI took an adverse employment action against her. The Seventh Circuit requires a showing that the employer took a *materially* adverse employment action. It has held that "not everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir.1996). A materially adverse employment action "mean[s] more than a mere inconvenience or an alteration of job responsibilities." *Cullom v. Brown*, 209 F.3d 1035, 1041 (7th Cir.2000). Adverse employment actions are those that result in a "materially adverse change in the terms, conditions, or privileges of plaintiff's employment." These include significant changes in employment status, "such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761, 118 S.Ct. 2257; *Haugerud*, 259 F.3d at 698 (and cases cited there). Binding case law makes clear, however, that the silent treatment and ostracism do not constitute materially adverse employment actions. *Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1039 (7th Cir.1998) (and cases cited there).

Ms. Hamilton has thus failed to raise a genuine issue of material fact as to whether she engaged in conduct protected by Title VII and, if she did, whether RDI retaliated against her for having done so.

### 3. *Ms. Hamilton's Constructive Discharge Claim.*

Ms. Hamilton alleges that she was constructively discharged in retaliation for having complained. She does not allege that anyone told her: "You're fired." As a practical matter, the burden of establishing a *constructive* retaliatory discharge is more onerous than the burden of proving an ordinary retaliatory discharge of the "you're fired" variety. To prove a constructive retaliatory discharge, Ms. Hamilton must present evidence from which a trier of fact may reasonably infer that RDI made work life so intolerable that a reasonable person in Ms. Hamilton's shoes would have felt compelled to resign. *Grube v. Lau Industries, Inc.*, 257 F.3d 723, 728 (7th Cir.2001); *Townsend v. Vallas*, 256 F.3d 661, 677 (7th Cir.2001). In other words, to prevail on a constructive discharge claim Ms. Hamilton must present evidence of a "campaign" of abuse and hostility. See, e.g., *Stutler*, 263 F.3d at 703–704, citing *Knox v. Indiana*, 93 F.3d 1327 (7th Cir.1996) (retaliatory constructive discharge in which co-workers embarked on "a campaign of vicious gossip and profanity aimed at making 'her life hell' in response to her complaints that a supervisor sexually harassed her."). Except under "extraordinary" circumstances, moreover, the plaintiff also must show that she tried to resolve her complaints with her employer while she was still employed. *Wolf v. Northwest Indiana Symphony Society*, 250 F.3d 1136, 1143 (7th Cir.2001); *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1015 (7th Cir.1997). Indeed, said the Seventh Circuit in agreeing with the Tenth: "An employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged." *Grube*, 257 F.3d at 728, *quoting Ulichny v. Merton Community School District*, 249 F.3d 686, 704 n. 16 (7th Cir.1997).

In view of this legal standard, the only fact which prompts us to hesitate is that Ms. Hamilton says that she complained to management about the retaliatory conduct and management told her there was nothing that could be done. Hamilton Declar. We pause only momentarily, however, because if the retaliatory conduct did not rise to the level of harassment or of an adverse employment action, then it was not actionable retaliation and management had no legal duty to seek to remedy it.

## IV. *Conclusion.*

For the reasons addressed, we find that Ms. Hamilton timely filed her complaint after receiving her Right to Sue Notice so that defendant's motion for summary judgment ion statute of limitations grounds is DENIED. We also find that Ms. Hamilton has presented legally insufficient evidence to support her claims of sex harassment, retaliation, and constructive discharge. Accordingly, we GRANT defendant's motion for summary judgment on the merits and dismiss Ms. Hamilton's complaint pursuant to Fed.R.Civ.P. 56.