**Cecil W. WATSON, Plaintiff–Appellant,**

v.

**John E. POTTER, Postmaster General of the United States, Defendant–Appellee.**

No. 01–3808.

United States Court of Appeals, Seventh Circuit.

Argued April 24, 2002.

Decided May 1, 2002.

Rehearing Denied July 12, 2002.

Before COFFEY, KANNE, and EVANS, Circuit Judges.

ORDER

Cecil Watson, an African American, sued the Postmaster General of the United States ("Postal Service") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, alleging that the Postal Service retaliated against him for filing a race discrimination complaint. After a bench trial before a magistrate judge, the district court adopted the recommendation that judgment be entered in favor of the Postal Service. Watson appeals, and we affirm because he did not suffer an adverse employment action.

I. Background

In 1984 Watson began working as a letter carrier for the Oak Park, Illinois, post office, and by 1988 he had become a supervisor at its River Forest branch. In 1990 he unsuccessfully applied for a managerial position, and the Equal Employment Opportunity Commission ("EEOC") found that he was denied the promotion because of his race. When the Postal Service did not comply with the EEOC's recommendation that Watson be promoted, he filed suit under Title VII. After a trial, the district court ordered that Watson receive the next managerial position and be elevated to a higher pay grade, but concluded that Watson failed to preserve the issue of back pay. Watson appealed, and we remanded the case to determine whether Watson was due back pay. *See Watson v. Henderson,* 222 F.3d 320, 321 (7th Cir.2000). That case is still pending in the district court.

In the meantime, Watson had been promoted to the position of superintendent of station/branch operations at the South Oak Park branch. While working in that position in July 1992, Watson filled in for his immediate supervisor, station manager James Riccio, while Riccio went on a two-week vacation. During one of those weeks, the station manager of the River Forest branch. Mark Rosenwinkel, was also on vacation, and the superintendent of station/branch operations of that branch, Carlo Lombardo, covered for him. It was not typical to allow two station managers to take their vacations at the same time, but the manager of customer services, George Stuper, approved both vacations

because he felt that he could accommodate them. Stuper, however, did not have enough resources to provide an assistant to both Watson and Lombardo for the entire time, leaving Watson without an assistant for four days, while Lombardo had an assistant the entire time. Stuper would later testify that he provided the assistant to Lombardo instead of Watson because it was Lombardo's first time managing a branch for that long, while Watson had more experience and could handle the job by himself.

The following month Watson received an annual performance rating of "very good" from station manager Riccio. The only rating higher than "very good" was "outstanding." Riccio testified at trial that he did not give Watson the "outstanding" rating because Watson had received numerous customer complaints and the office did not meet all of its goals. Watson had never received a rating of "outstanding," and, according to a Postal Service policy, "outstanding" ratings should rarely be given.

In February 1993 the United States Postal Service underwent a nationwide restructuring, and the Oak Park post office (including the River Forest and South Oak Park branches) was allocated nine supervisors. Under the restructuring plan, the Oak Park Postmaster, Ronald Pusateri, could have replaced all of his supervisors (including Watson), but Pusateri instead decided to keep his eight existing supervisors and to recruit a ninth. A couple of weeks later, however, Pusateri learned that only six, rather than nine, supervisor positions had been allotted to the Oak Park post office. Pusateri then revoked the job offer to the ninth supervisor and had to decide which two supervisors would be transferred to another post office. Pusateri had no trouble choosing five supervisors to keep, but was unsure whether to keep Watson or Ben Cozzone for the final supervisory position in mail processing. To help him decide, Pusateri asked the remaining supervisors for their input. One of those supervisors, James Carmichael, stated that Pusateri had to select Watson for the position because if he did not Watson would file an EEOC complaint. At trial Pusateri testified that he responded to Carmichael "in no uncertain terms [that] there would be no talk like that in that meeting. It had no bearing on the best person for the Oak Park Post Office." Pusateri eventually decided to keep Cozzone rather than Watson because he believed that (1) Cozzone had more experience with mail processing; (2) Watson was not a "team player"; and (3) Watson had generated more customer complaints than any other supervisor or manager at the Oak Park post office. Watson immediately began working at the Addison, Illinois, post office as a supervisor with the same title, pay grade, responsibilities, and benefits he had in Oak Park. The Addison post office is farther from Watson's home than the South Oak Park branch.

After being transferred Watson sued the Postal Service under Title VII, arguing that it retaliated against him for filing a previous discrimination complaint by (1) failing to provide him with an assistant during the four days that he covered for the station manager; (2) rating him as "very good" rather than "outstanding"; and (3) transferring him to another post office after the nationwide restructuring. After a bench trial, a magistrate judge recommended that judgment be entered in favor of the Postal Service because there were no facts suggesting that either the failure to provide an assistant or the decision to give a "very good" rating "was in any way retaliation for [Watson's] EEOC activity." The magistrate judge further concluded that Watson "was displaced from his position at the South Oak Park

Post Office as a result of the reorganization of the Postal Service" and that "[i]t was not due to his [EEOC] activity." The district court adopted the magistrate judge's recommendation because "the Postal Service had articulated legitimate, non-discriminatory reasons for its actions, and no evidence existed that the proffered reasons were pretextual."

## II. Analysis

In order to prevail on a retaliation claim, an employee must demonstrate by a preponderance of the evidence that (1) he opposed an unlawful employment action; (2) he suffered an adverse employment action; and (3) there was a causal link between them. *Cullom v. Brown,* 209 F.3d 1035, 1040 (7th Cir.2000). We review the district court's legal conclusions de novo and its factual findings for clear error. *Johnson v. West,* 218 F.3d 725, 729 (7th Cir.2000).

Watson argues that he sufficiently proved at trial that the Postal Service retaliated against him for his prior discrimination charge by (1) requiring him to cover for the station manager without an assistant for four days; (2) rating his performance "very good" rather than "outstanding"; and (3) transferring him to another post office after the nationwide restructuring. But none of these are adverse employment actions because they do not "constitute[ ] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. El-lerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Stutler v. Ill. Dep't of Corr.,* 263 F.3d 698, 703 (7th Cir. 2001). First, working without an assistant for four days is nothing more than a " 'mere inconvenience.' " *Oest v. Ill.*

*Dep't of Corr.,* 240 F.3d 605, 612 (7th Cir. 2001) (quoting *Crady v. Liberty Nat'l Bank & Trust Co.,* 993 F.2d 132, 136 (7th Cir.1993)); *see also Halloway v. Milwaukee County,* 180 F.3d 820, 826–27 (7th Cir.1999) (finding no adverse employment action where employee temporarily had inadequate offices, support staff, and materials). Second, negative employment evaluations do not constitute adverse employment actions unless they are accompanied by some tangible job consequence such as "a reduction in pay or diminution in job responsibilities," *Hilt–Dyson v. City of Chicago,* 282 F.3d 456, 466 (7th Cir.2002); *see also Grube v. Lau Indus., Inc.,* 257 F.3d 723, 729 (7th Cir.2001), and Watson presented no evidence of any negative consequences resulting from the "very good" rating. Moreover, Watson did not refute the Postal Service's position that a "very good" rating is indeed a positive performance rating. Finally, "a lateral transfer without a loss in benefits does not constitute an adverse employment action," *Stutler,* 263 F.3d at 702, even if the employee would have to travel farther to work, *Hill v. Am. Gen. Fin., Inc.,* 218 F.3d 639, 645 (7th Cir.2000); *Spring v. Sheboygan Area Sch. Dist.,* 865 F.2d 883, 886 (7th Cir.1989). Because the Postal Service transferred Watson to a position with the same title, pay grade, responsibilities, and benefits he had in Oak Park, he did not suffer an adverse employment action. *See Fortier v. Amer-itech Mobile Communications, Inc.,* 161 F.3d 1106, 1111 n. 7 (7th Cir.1998). We therefore AFFIRM the judgment of the district court.