**Glenda J. LINER, Plaintiff–Appellant,**

v.

**DONTRON, INC., T/A Radio Station WYCA–FM, a wholly owned subsidiary, Defendant–Appellee.**

No. 00–4088.

United States Court of Appeals, Seventh Circuit.

Argued April 24, 2001.

Decided May 21, 2001.

Rehearing and Rehearing en banc Denied June 18, 2001.

Before POSNER, EVANS, WILLIAMS, Circuit Judges.

### ORDER

Glenda Liner appeals a grant of summary judgment to her former employer, T/A Radio Station WYCA–FM (WYCA), a wholly owned subsidiary of Dontron, Inc. (Dontron), in her lawsuit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging sex discrimination and retaliatory discharge.

In 1988 Liner began working as a sales account executive for radio station WYCA selling advertising air time, collecting advertising fees, and servicing advertising clients. She quit in 1991 based on her disapproval of how her immediate supervisor, Taft Harris, who acted as general manager, station manager, and sales manager, treated employees at the station. Although Harris continued to manage the station and the sales department, Liner returned to work for WYCA in 1993, again as a sales account executive.

With respect to her ability to sell advertising time, it is undisputed that Liner was very good, and WYCA generated a high amount of sales revenue for the station's parent company, Dontron, due to her efforts. It is also not disputed that at one point, Dontron and Harris planned to train Liner to take over Harris's position as

sales manager. Despite Liner's excellent sales record, however, Harris in 1995 began issuing a series of written reprimands and instituting disciplinary actions based on what he saw as Liner's failure to comply with company policy. Among other things, Harris reprimanded Liner and sometimes retained a portion of her earned commission for failing to submit sales and time log forms on a daily basis; accepting a faxed copy of a signed contract in lieu of an original; not attending a mandatory sales department staff meeting; executing a contract with a client for an air time rate without Harris's prior approval; allowing an advertising account to remain on the air even though it was behind on payments; allowing advertising to air although the client's contract had expired; and showing a client the station's "rate card" for advertising time.

In a May 2, 1997, memorandum, in which Harris reprimanded Liner for accepting payment on an account with a check made out to her personally and then reimbursing the station in cash, Harris warned her that she would be terminated if she violated company policy another time. Liner was again reprimanded the following month for not seeking approval on an account contract from Kyle Simpson, a male account executive who had been promoted to sales coordinator (an intermediate position between sales manager and account executive) and was eventually promoted to sales manager. Harris did not, however, move to discharge Liner, stating that he and Simpson would give her another chance. Liner received two more memoranda during June, both from Simpson, reprimanding her for not submitting a con-

tract to him for approval and submitting contracts for approval that were either incomplete or deviated from station rate or contract length policy.

On June 12, 1997, the owner of WYCA, Donald Crawford, authorized Harris to fire Liner. Sometime after June 13, 1997, Crawford received notice from the EEOC that Liner had filed a charge of discrimination with the agency against the station alleging sex harassment and sex discrimination based on deductions from her commission.[1] Liner was terminated from her employment at WYCA on June 27, and she filed a second EEOC charge claiming that she was terminated in retaliation for filing her initial EEOC charge. After receiving a right-to-sue letter from the EEOC, she filed this lawsuit, alleging that she was discriminated against on the basis of sex during her employment at WYCA, that she was terminated in retaliation for filing a charge with the EEOC, and that she was wrongfully terminated in violation of Illinois law.

Dontron moved for summary judgment, and Liner, who was then represented by counsel, responded. The district court granted Dontron's motion, reasoning primarily that Liner failed to present direct evidence of discrimination and that she did not meet her burden of producing evidence that she was performing her job satisfactorily, or that Harris's and/or Simpson's reprimands were a pretext for discrimination. The court also concluded that Liner failed to provide a causal link between her EEOC charge and her termination from which a jury could infer retaliation. Liner, now without counsel, appeals.[2]

---

1. In its order, the district court cited June 12, 1997, as the date the notice of Liner's EEOC charge was sent to Dontron. The notice, which was included in the record in the district court, states June 13, 1997. Liner does not contest on appeal that June 13 is the correct date.

2. Both parties erroneously name Donald Crawford as a defendant. Crawford was voluntarily dismissed from the lawsuit shortly after Dontron filed its motion for summary judgment, and Liner does not challenge this voluntary dismissal.

Although Liner argued in the district court that a statement made by Harris to a female coworker constituted direct evidence of discrimination, she does not raise this point on appeal and therefore it is waived as an issue. *See United States v. Turner*, 203 F.3d 1010, 1019 (7th Cir.2000). Liner instead appears to rely on the indirect burden-shifting method of proof outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To satisfy a prima facie case of discrimination pursuant to *McDonnell Douglas*, Liner must demonstrate that she belonged to a protected class, she performed her job satisfactorily, she suffered an adverse employment action, and similarly situated employees not in the protected class were treated more favorably. *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 986 (7th Cir. 2001). If Liner demonstrates a prima facie case, then the burden shifts to Dontron to present a legitimate, nondiscriminatory reason for firing her. *Id.* To rebut the offered explanation, Liner must present evidence that Dontron's reason is a pretext for sex discrimination, pretext meaning "a dishonest explanation, a lie rather than an oddity or an error." *Id.* (citations and internal quotations omitted).

■ The district court, in granting summary judgment, concluded that Liner failed to establish a prima facie case of discrimination because she did not produce evidence that she was performing her job in a satisfactory manner and, even if she had produced such evidence, she did not offer evidence from which a jury could infer that Dontron's reason for firing her was dishonest. On appeal, Liner seems to argue first that she was performing her job satisfactorily based on her excellent sales record and that she was qualified to be promoted to sales manager, a position ultimately given to Mr. Simpson. Liner's evidence of her proven ability to sell advertising, however, is undisputed but irrelevant to the question whether she was performing her job in a satisfactory manner. Dontron did not refuse to promote her because her sales were lagging; rather, Liner's personnel file contained a litany of complaints of insubordination and failure to comply with company policies and procedures that, despite her fine sales record, constituted substandard work performance. *Cf. Mills v. First Fed. Sav. & Loan Ass'n*, 83 F.3d 833, 846 (7th Cir. 1996) (with respect to pretext analysis, employee's satisfactory performance in some aspects of job does not necessarily undermine employer's explanation for termination).

■ Liner's other arguments apparently relating to whether Harris's disciplinary actions were a pretext for discrimination are similarly unavailing. Liner believes that a state court's determination that the deductions from her earned commission violated the Illinois Wage Payment and Collection Act, 820 ILCS 115 (1997), somehow demonstrates a violation of Title VII. That the deductions were not valid under state law, however, does not speak to the issue whether Dontron honestly believed that it should deduct commissions to prevent future violations of company policy. *See, e.g., O'Regan*, 246 F.3d at 986, 987 (although company's employment agreement may have been illegal, unenforceable, and "bad business decision," that company forced employees to sign agreement did not establish pretext).

■ Furthermore, a February 12, 1997, memorandum from Harris to Liner and Simpson declaring that neither employee would be promoted to sales manager at that time does not relate to whether Harris's decision not to promote Liner was pretextual. The memo was addressed to both Liner and Simpson, and Liner has not produced any evidence to refute Harris's legitimate explanation for temporarily

suspending the promotion of either Liner or Simpson to sales manager—that there was no need to hire or train additional sales executives at that time. Liner also does not explain the relevance of Harris's inability to remember during his deposition whether some of the policies he instituted with the sales department were transmitted in writing or verbally. Nor does Liner elucidate how Harris's awareness (or unawareness) of account executive billing relates to the issue of pretext.[3]

■ A closer question relating to pretext, however, is presented by Liner's argument that the company policies she was accused of violating were either inconsistently applied to all sales executives or established after the fact in order to entrap her. Liner produced evidence that she was not at fault for the episode in which she was reprimanded for allowing an ad to go on the air even though the client's contract had expired. Specifically, both Liner and a coworker of Liner's named Tara Locke testified during their depositions that the problem was obviously a bookkeeping error beyond Liner's control. Second, although Harris insisted during his deposition that he pre-approved all extensions of existing contracts, Liner testified that that was not the policy as she understood it. Locke also testified that Simpson was once late for a sales meeting, but Harris's reaction was informal and mild compared to the yelling and formal reprimand Liner received for the same offense. Finally, Locke explained that Harris himself would often violate the same policies for which he would reprimand Liner: using faxed copies in place of original contracts, allowing clients to air ads despite delinquent accounts, and writing personal checks to the station to cover his client's delinquent accounts.

Assuming that the above facts demonstrate that the station's policies were inconsistently applied or unclearly established, a recent Title VII decision of this court may support Liner's contention that she established a genuine issue of material fact regarding whether the establishment and application of the policies was pretextual. In *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 895 (7th Cir.2001) (petition for rehearing and petition for rehearing en banc pending), a flight attendant trainee for an airline carrier was terminated after committing a series of company policy violations. A divided panel reversed the grant of summary judgment to the defendant employee because the court's "review of the record reveal[ed] inconsistencies in definition and disparities in application" of disciplinary policies that called into question the employer's explanation for firing the employee. *Id.* at 889. We reversed the grant of summary judgment even though the employee admitted that he performed an unauthorized action leading to his termination. *Id.* at 889.

Like the employee in *Gordon*, Liner has produced evidence that Harris disciplined her more harshly than Simpson for a similar infraction, that she was not at fault for a violation of company policy for which she was held responsible, and that she was not made aware of some of Harris's policies until after she was reprimanded for violating them. She also produced evidence that Harris himself was not following some of the policies that he reprimanded her for violating. Finally, as in *Gordon*, Liner admitted that she had violated company policy. But unlike the plaintiff in *Gordon*, *see id.* at 895, Liner was warned several times that any further violations of company policy, specifically executing contracts

---

3. In her brief, Liner also claims that Harris admitted that a client can see a schedule of rates for air time, or a "rate card." But this alleged admission appears nowhere in Harris's deposition and is therefore not supported by the record.

without prior approval from Simpson and providing incomplete information when seeking contract approval, would result in her termination.

 In addition, at one point in her deposition Liner admitted that regardless of whether it was actual company policy not to accept checks from clients personally made out to her, Harris believed that Liner violated company policy for doing so. This admission, coupled with Locke's testimony that Harris "was a lousy manager in general" whose "inability to manage did not just affect the women, it affected the men, anyone who had a family, outside obligations," paint a picture of Harris as a poor manager, with perhaps unreasonable expectations of his employees. Nevertheless, showing that an employer is a bad manager does not demonstrate pretext because "the issue of pretext does not address the correctness or desirability of reasons offered for employment decisions. Rather, it addresses the issue of whether the employer honestly believes in the reasons it offers." *Wade v. Lerner New York, Inc.*, 243 F.3d 319, 323 (7th Cir.2001) (citation and internal quotations omitted). *See also Pitasi v. Gartner Group, Inc.*, 184 F.3d 709, 718 (7th Cir.1999) (To demonstrate pretext, it is insufficient for employee "to show that his employer fired him for incorrect or poorly considered reasons. He must establish that the employer did not honestly believe the reasons it gave for terminating him."). We do not believe that Liner has offered any evidence to dispute her own concession that Harris actually believed that Liner violated company policy, regardless of whether a company policy was actually established. Therefore, Liner has not established that irregularities in company policy constituted evidence of a pretext for sex discrimination.

 Liner next argues that the district court improperly granted summary judgment on her retaliation claim. She offered no direct evidence of retaliatory discharge, and so, to establish a prima facie case of retaliation, she must provide evidence that she reported or opposed conduct protected by Title VII; she suffered an adverse employment action; and there is a causal relationship between her opposition to the prohibited activity and the adverse job action. *Basith v. Cook County*, 241 F.3d 919, 933 (7th Cir.2001). It is undisputed that Liner meets the first two requirements of a prima facie case of retaliation. In order to establish the third requirement, causation, Liner must demonstrate that Dontron would not have fired her "but for" her opposition to the prohibited conduct. *Id.* She has not done so. Dontron did not receive notice of Liner's EEOC charge until after June 13, 1997, one day after Crawford authorized Harris to terminate her. Thus, there is no chronological link between the receipt of the EEOC charge and Crawford's decision to terminate Liner. Furthermore, as explained in the above discussion regarding Liner's sex discrimination claim, Liner has not produced evidence to refute Dontron's legitimate business reason for firing her: that she repeatedly failed to conform to company policy despite repeated warnings that she would be terminated if the violations continued.

 Liner raises several other issues relating to her retaliation claim, none of which were raised before the district court. First, she claims that Crawford knew about Harris's alleged discriminatory treatment against her before she filed her EEOC complaint because she wrote a letter to him complaining of the deductions from her commission and of Harris's harsh reprimands. But to state a valid retaliation claim, the employee's "complaint must involve discrimination that is prohibited by Title VII," *Hamner v. St. Vincent Hosp.*

*and Health Care Ctr., Inc.,* 224 F.3d 701, 707 (7th Cir.2000), and in this letter she does not mention sex discrimination or any type of harassment based on gender. Thus, her letter did not constitute protected expression under Title VII and she does not satisfy a prima facie case of retaliation.

■ She also appears to make an ineffective investigation claim by arguing that Dontron's corporate officers did not address Harris's alleged discrimination or hostile environment when they visited the station and that Dontron does not have a human resources department. Besides not raising these issues in the district court, Liner does not develop a comprehensible argument supported by anything in the record. Accordingly, the issue is waived. *See Anderson v. Hardman,* 241 F.3d 544, 545 (7th Cir.2001) (even pro se litigants must provide "cogent arguments in any appellate brief").

■ As a final matter, Dontron moved to strike Liner's appendix and parts of her reply brief. Only four of the documents in Liner's appendix were presented to the district court, and the remainder are unauthenticated and were not presented in Liner's response to summary judgment or in the record on appeal. Liner responds that the district court was aware of the substance of the documents because she referenced the contents of them in her deposition. But because we do not permit litigants "to stray beyond the bounds of the record for reasons so obvious and familiar that they scarcely require mention," *see United States v. Hoover,* 246 F.3d 1054, 1059 (7th Cir.2001) (Rovner, J., concurring), those documents presented for the first time in Liner's appendix are struck from the record, and we disregard statements in her reply brief that cite only those documents for support, *McClendon v. Indiana Sugars Inc.,* 108 F.3d 789, 795 (7th Cir.1997) ("Evidence that was not proffered to the district court ... is not part of the appellate record" and "has no place in an appellate brief."); *United States v. Phillips,* 914 F.2d 835, 840 (7th Cir.1990) ("An appellant may not attempt to build a new record on appeal to support his position with evidence that was never admitted in the court below.").

Because Liner has failed to provide any evidence demonstrating that she performed her job satisfactorily or that Dontron's reasons for firing her were pretextual or retaliatory, we AFFIRM. We moreover GRANT Dontron's motion to strike Liner's appendix and portion's of her reply brief. We DENY AS MOOT Dontron's motion for leave to file a reply in support of their motion to strike.