**Kimberly A. MARTING, Plaintiff,**

**v.**

**CRAWFORD & COMPANY, Defendant.**

**No. 00 C 6167.**

United States District Court,
N.D. Illinois,
Eastern Division.

May 28, 2002.

**962**

Elizabeth Hubbard, Lisa Martinez Losano, Hubbard & O'Connor, Ltd., Chicago, IL, for Plaintiff.

David J. Tecson, Fumagalli, Tecson & Hyman, Ltd., Chicago, IL, William H. Barrett, J. Kevin Hennessy, Michael Best & Friedrich, Chicago, IL, for Defendant.

## MEMORANDUM ORDER

BOBRICK, United States Magistrate Judge.

Before the court is the motion of defendant Crawford & Company for summary judgment on the complaint of plaintiff Kimberly Marting.

### I. BACKGROUND

Plaintiff brings this suit alleging violations of the Equal Pay Act, 29 U.S.C. § 206(d)(1), and Title VII of the Civil Rights Act of 1964. She worked for defendant as a casualty claims adjuster for ten years until she quit in May of 2000. According to plaintiff's complaint, she was paid less than a similarly situated male claims adjuster. She also claims she was discriminated against due to her gender in various ways-criticism, performance reviews, pay, work assignments-and was subjected to sexual harassment from her supervisor. The defendant now moves for summary judgment on all of plaintiff's claims.

### I. FACTS

■ In this case, both parties have filed the requisite Local Rule 56.1[1] submissions

---

1. Rule 56.1(a) requires the party moving for summary judgment to file, among other items, a "statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." Local Rule 56.1(a)(3). The required statement is to consist of short numbered paragraphs, including within each paragraph specific cites to the record which support the facts set forth. *Id.* Rule 56.1(b) then requires the opposing party to file among other items:

in this summary judgment proceeding. We rely on these submissions in our analysis; it is not the court's task to scour the record in search of evidence to defeat a motion for summary judgment. *Brasic v. Heinemann's, Inc.*, 121 F.3d 281, 285 (7th Cir.1997). The nonmoving party must identify with reasonable particularity the evidence upon which she relies in order to stave off summary judgment. *Id.* Our review of these filings reveals that plaintiff has failed to adequately support her claims so as to raise any genuine issues of material facts, thereby entitling defendant to summary judgment.

Defendant provides insurance-related services such as claims management, risk management, and consulting. Plaintiff worked at defendant's Schaumburg, Illinois branch, which served mostly insurers who had outsourced claims. Claims adjusters, such as plaintiff, were of several grades: Casualty Adjuster I through IV, then Casualty General Adjuster. Plaintiff was hired as a Casualty Adjuster I in January of 1990 and progressed to the level of Casualty General Adjuster by May of 1997. In several increments over that time, her salary increased from an initial rate of $1606 per month to $3977 per month. In addition, from the time she became a Casualty Adjuster IV in February of 1995, plaintiff was eligible for performance-based bonuses calculated on 3% of her billings. Then, when she became a Casualty General Adjuster, her bonuses were calculated on 7% to 10% of

her billings. Plaintiff typically earned approximately $20,000 in bonuses per year. During most of her tenure there, Don Garlough was branch manager.

In late 1999, Mr. Garlough brought in a new supervisor for the branch, David Martin, and indicated there would be something of a revamp which he termed a "return to quality." Not surprisingly—at least not in light of the court's experience in employment cases-the new direction and supervisor caused problems in the branch, especially among the longer-tenured employees. In this case, there was apparently immediate friction between Martin and plaintiff and Martin and another claims adjuster, Darrell Lear, when Martin took over as supervisor in January of 2000. (*Deposition of Martin*, at 82–83). Early on, plaintiff and Martin got into an argument over replacing a cell phone, which included plaintiff yelling and throwing the cell phone. (*Statement of Material Facts in Support of Crawford & Company's Motion* ("*Def.St.*"), ¶ 80; *Plaintiff's Response to Def. St.* ("*Pl.Resp.*"), ¶ 80). Martin thought plaintiff had thrown the phone at him and felt sufficiently threatened to complain to Garlough, asking that plaintiff be fired. (*Deposition of Martin*, at 68–69). When she refused to apologize, plaintiff claims Martin responded by saying:

> You know, you are a strong woman, and I don't like strong women. And you know what I would have done to you if you were a man? I would have thrown

a concise response to the movant's statement that shall contain: (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and (B) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials.

Local Rule 56.1(b)(3). Rule 56.1(b) further provides that "all material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." *Id.* The district court, with the approval of the Seventh Circuit, has long enforced the requirements of these rules. *Markham v. White*, 172 F.3d 486, 490 (7th Cir.1999) (discussing Local General Rule 12, the predecessor to Rule 56.1).

you up against a wall and punched you face in, but because you are not a man, you are a strong woman, I know how to get back at you. I am going to hit you in your pocketbook.

*(Plaintiff's 56.1(b)(3)(B) Statement ("Pl.St."),* ¶ 172). Martin denies having made these remarks. *(Deposition of Martin,* at 92–93).[2]

Martin also denies making any of the other remarks plaintiff attributes to him. *(Deposition of Martin,* at 94–95). According to the plaintiff, Martin told her she was "busting his balls." He said this "more than one time, less than a hundred" in a period of less than two months. *(Deposition of Marting,* at 194). He also purportedly said "oh, you skinny people" to her a couple of times. *(Deposition of Marting,* at 182).[3] In addition, plaintiff claims that there was an occasion after work, at a pub, when plaintiff was discussing her experience of nude modeling at a table of ten people, and Martin said he would like to see the photos. *(Deposition of Marting,* at 195–196).[4] There were also two occasions when Martin called her at home on work-related matters that could have waited until she was at the office. *(Pl. St.,* ¶¶ 220–221). He also called her a big pain in the neck, and said he was very good at lying. *(Pl. St.,* ¶¶ 224, 226). Plaintiff cites all these as examples of sexual harassment.

Shortly after the cell phone altercation, Martin began questioning and cutting cer-

tain of plaintiff's phone charge claims. Marting went to Garlough to complain about how Martin was treating her, saying that she felt she was "being picked on." *(Deposition of Marting,* at 149). She complained about the phone charge issue. *(Deposition of Marting,* at 156–157). Plaintiff told Garlough she considered Martin's actions to be retaliation for the cell phone incident. *(Pl. St.,* ¶ 189; *Deposition of Marting,* at 156). She claims that no other adjuster's expenses were being questioned-specifically not those of Ron Sturek, Darrell Lear, or Julie Berns. *(Pl. St.,* ¶ 190; *Deposition of Marting,* at 226). According to plaintiff, Garlough told her he would "stand behind" Martin.

About two weeks after plaintiff spoke to Garlough, she was transferred to defendant's Kenosha office on February 21, 2000. There was a surge in product liability claims at defendant's Kenosha office, and the manager there asked for extra adjusters to help out. Garlough considered the caseloads, clients, and experience of the adjusters at his office and decided to assign plaintiff to the Kenosha office. Plaintiff's caseload at the time was light-she was billing just four to five hours a dayshe was able to handle products liability claims, and she and the Kenosha supervisor had worked together before. Garlough did not consult Martin about the reassignment. Plaintiff, of course, opposed the reassignment; her commute to work increased significantly, and she

---

**2.** At deposition, plaintiff's counsel called into question Martin's memory over these and other comments. There may be something to this, as Martin, testifying in 2001, could not recall whether he left his previous job in 1996, 1997, or 1998, and could only "guess" that he had been divorced in 1996. *(Deposition of Martin,* at 12–13, 16)

**3.** In her statement of facts, plaintiff somewhat argumentatively characterizes this comment as a claim that Martin made inappropriate

comments about her body. *(Pl. St.,* ¶ 176). This is not a statement of fact, as required by the local rule.

**4.** Again, plaintiff is rather disingenuous in her account of this incident in her *Response to Defendant's Motion,* where she claims that Martin "requested to see her naked after eaves-dropping on a private conversation." *(Id.* at 9). In her statement of facts, she claims "Martin stated to [plaintiff] that he would like to see her naked." *(Pl.St.,* ¶ 199).

claimed she would be unable to meet the billing quota of 10.5 hours a day without committing fraud. She questions the credibility of Garlough's stated reason for the transfer, pointing out that Garlough testified that "Ron Sturek had to take over several products liability claims from [plaintiff] because she could not handle it." (*Pl.St.* ¶ 242). Garlough also testified, however, that these were "heavy products liability claims that only [Sturek] could handle." (*Deposition of Garlough*, at 83–84). As for plaintiffs concerns about fraud, she admits that, because certain tasks were billed at a flat rate, an adjuster could, for example, bill ten hours in seven hours of work. (*Pl.Resp.* ¶ 17).

While plaintiff was working in Kenosha, Martin gave her a quarterly performance evaluation. Plaintiff claims it was the lowest she ever received while in defendant's employ, and defendant does not dispute that it was. Plaintiff felt that her Kenosha supervisor should have played some role in the evaluation, but according to plaintiff, Martin told her he did not need any input. She also claims that her review was affected by Martin failing to take her vacation time into consideration.[5]

## II. *ANALYSIS*

### A. *Summary Judgment*

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). To ward off summary judgment by showing that there is a genuine dispute on a material fact, the non-moving party must do more than raise a "metaphysical doubt" as to the fact's existence. *Gleason v. Mesirow Fin., Inc.*, 118

F.3d 1134, 1139 (7th Cir.1997). The non-moving party cannot merely allege the existence of a factual dispute. *McPhaul v. Board of Com'rs of Madison County*, 226 F.3d 558, 563 (7th Cir.2000). That party must supply evidence sufficient to allow a jury to render a verdict in their favor. *Id.*

### B. *Equal Pay Act*

■ Plaintiff alleges that defendant violated the Equal Pay Act by failing to pay her as much as Darrell Lear. To demonstrate a prima facie case for a violation of the Equal Pay Act, a plaintiff must establish: "(1) that different wages are paid to employees of the opposite sex; (2) that the employees do equal work which requires equal skill, effort, and responsibility; and (3) that the employees have similar working conditions." *Markel v. Board of Regents of University of Wisconsin System*, 276 F.3d 906, 912–913 (7th Cir.2002). The plaintiff would have to show that the jobs compared are substantially equal, "based upon 'actual job performance and content—not job titles, classifications or descriptions.'" *Id.* at 913, *citing EEOC v. Mercy Hosp. and Med. Ctr.*, 709 F.2d 1195, 1197 (7th Cir.1983). After a plaintiff has demonstrated a prima facie case, the employer may respond with affirmative defenses to show the pay differential is due to: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than sex. 29 U.S.C. § 206(d)(1); *Markel*, 276 F.3d at 913. The Seventh Circuit has recognized that the fourth affirmative defense is a broad, catch-all exception that embraces a nearly limitless array of ways to distinguish among employees. *Fyfe v.*

---

**5.** Plaintiff testified that Martin made the same error with Ron Sturek's evaluation, but corrected it when Sturek called him on it. (*Deposition of Marting*, at 214–15). Plaintiff was merely testifying as to what Sturek told her,

however, and such evidence is not admissible on summary judgment. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir.1996).

*City of Fort Wayne,* 241 F.3d 597, 600 (7th Cir.2001).

■ Plaintiff has not pointed to any evidence to support an Equal Pay Act claim. First, she admits that she earned more than not only Darrell Lear, but more than any male claims adjuster. (*Def.St.,* ¶ 106; *Pl.Resp.,* ¶ 106). Second, she claims that Lear's base salary was more than hers but submits no evidence to prove this. In her statement of facts, she cites to her deposition testimony, in which she testifies that she learned she was making less base salary than him when he showed her his paycheck. (*Pl.St.,* ¶ 229; *Deposition of Marting,* at 274). While plaintiff submits Lear's affidavit as evidence of what his base salary was, she submits neither evidence as to her base salary nor includes it in her statement of facts. (*Pl.St.,* ¶¶ 229–232; *Deposition of Marting,* at 274–279). We have only the bare, unsupported claim that Lear's "base salary was more than [plaintiff's] base salary." (*Pl.St.,* at ¶ 229). As noted above, a plaintiff must go beyond allegations to stave off summary judgment. Third, assuming plaintiff came forward with evidence to support her base-salary claim, she would be unable to dispute the ˙fact that she earned more than Lear when their bonuses were considered. The regulations accompanying the Equal Pay Act define wages as follows:

> Under the EPA, the term "wages" generally includes all payments made to [or on behalf of] an employee as remuneration for employment. The term includes *all forms of compensation* irrespective of the time of payment, whether paid periodically or deferred until a later date, and *whether called wages, salary, profit sharing, expense account, monthly minimum, bonus, uniform cleaning allowance, hotel accommodations, use of company car, gasoline allowance, or some other name.* Fringe benefits are deemed to be remuneration for employment. "Wages" as used in the EPA (the purpose of which is to assure men and women equal remuneration for equal work) will therefore include payments which may not be counted under section 3(m) of the FLSA toward the minimum wage (the purpose of which is to assure employees a minimum amount of remuneration unconditionally available in cash or in board, lodging or other facilities). Similarly, the provisions of section 7(e) of the FLSA under which some payments may be excluded in computing an employee's "regular rate" of pay for purposes of section 7 do not authorize the exclusion of any such remuneration from the "wages" of an employee in applying the EPA. Thus, vacation and holiday pay, and premium payments for work on Saturdays, Sundays, holidays, regular days of rest or other days or hours in excess or outside of the employee's regular days or hours of work are deemed remuneration for employment and therefore wage payments that must be considered in applying the EPA, even though not a part of the employee's "regular rate."

29 C.F.R. § 1620.10 (emphasis added). Thus, because plaintiff's wages were more than Lear's, she has no Equal Pay Act claim.

### C. *Title VII*

#### 1. *Sexual Harassment*

■ Plaintiff brings the remainder of her complaint under Title VII, alleging sexual harassment, sexual discrimination, and retaliation.[6] To maintain a claim for

---

**6.** It is not entirely clear from plaintiff's submissions that she is alleging both sexual harassment and discrimination (*Plaintiff's Response to Defendant's Motion,* at 8 ("this litigation is not a sexual harassment case")), but we will evaluate the record as if she alleged both causes of action in any event.

sexual harassment under Title VII, an employee must demonstrate that her co-worker or supervisor harassed her because of her sex. *See Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998). In addition, this harassment must be "so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment." *Faragher v. City of Boca Raton,* 524 U.S. 775, 786, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (*quoting Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). The resultant "hostile work environment" must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher,* 524 U.S. at 787, 118 S.Ct. 2275, 141 L.Ed.2d 662; *Hilt–Dyson v. City of Chicago,* 282 F.3d 456, 463 (7th Cir.2002). Courts have indicated a number of factors that may be considered in determining whether contested conduct actually creates an objectively hostile work environment, including "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher,* 524 U.S. at 787–88, 118 S.Ct. 2275, 141 L.Ed.2d 662; *Hilt–Dyson,* 282 F.3d at 463. In this case, plaintiff's sexual harassment claim is based on a number of comments and verbal exchanges, occurring over less than a two-month period, that she found offensive. As plaintiff admits, there were no incidents of any physical contact or of a physically threatening nature whatsoever. She does not suggest that the comments unreasonably interfered with her work performance.

Title VII does not prohibit all verbal or physical harassment in the workplace. *See Oncale,* 523 U.S. at 81, 118 S.Ct. at 1002–1003; *Hilt–Dyson,* 282 F.3d at 463. Accordingly, isolated and minor incidents of questionable conduct generally will not warrant a conclusion of sexual harassment, nor will "occasional vulgar banter, tinged with sexual innuendo of coarse or boorish workers." *Hilt–Dyson,* 282 F.3d at 463. Moreover, the alleged discriminatory conduct cannot be considered in a vacuum; rather, an employee's claim must be evaluated in light of the social context in which events occurred. *See Oncale,* 523 U.S. at 82, 118 S.Ct. at 1003; *Hilt–Dyson,* 282 F.3d at 463. Plaintiff here is complaining of just this type of vulgar banter over a brief period of time: it is simply not much of a case.

Worse for plaintiff, however, is the type of comments of which she complains. Title VII prohibits harassment to the extent it occurs because of an employee's gender. *Oncale,* 523 U.S. at 78, 118 S.Ct at 1001; *Spearman v. Ford Motor Co.,* 231 F.3d 1080, 1084 (7th Cir.2000). Thus, the complained of conduct must have either a sexual or racial character or purpose to support a Title VII claim. *Hardin v. S.C. Johnson & Son, Inc.,* 167 F.3d 340, 345 (7th Cir.1999). The record must demonstrate that the abuse was motivated by her gender rather than by a personal dislike, grudge, or workplace dispute unrelated to gender. *Spearman,* 231 F.3d at 1085; *Galloway v. General Motors Service Parts Operations,* 78 F.3d 1164, 1168 (7th Cir.1996). Here, review of all of the remarks of which plaintiff complains reveals no evidence that her gender motivated them and, consequently, they provide not support for plaintiff's claim of sexual harassment. The only significant remark in this case comes from plaintiff's brief: "this litigation is not a sexual harassment case." (*Response to Defendant's Motion,* at 8). We must find that defendant is

entitled to summary judgment on plaintiff's claim of sexual harassment.

### a. "I am going to hit you in your pocketbook."

The parties seem to agree that, immediately preceding Martin's alleged threat to "hit [plaintiff] in her pocketbook," plaintiff threw a cell phone at Martin during an argument over replacing it. (*Plaintiff's Response to Defendant's Statement,* ¶ 80). Whether or not that was exactly the case, there was a heated argument with raised voices. Plaintiff claims that, in response, Martin said that plaintiff was a strong woman and he didn't like strong women; that if she were a man he would have responded physically to her violent action; and that because she was a woman, he would not respond physically, but would "hit her in her pocketbook." As noted above, such comments must be viewed in their social context. Martin was responding to a heated argument plaintiff had with him; it was not a response born of gender bias, but of anger or personal dislike. *See Spearman,* 231 F.3d at 1085 (no sexual harassment where explicit insults were employed to express acrimony over work-related disputes); *Brill v. Lante Corp.,* 119 F.3d 1266, 1274 (7th Cir.1997) (no sexual harassment where supervisor yelled at plaintiff while "towering" over her).

### b. "ball busting"

According to plaintiff, on more than one but less than one hundred occasions, Martin told her she was "busting his balls," or was a "ball-buster." Plaintiff submits, without evidence, that these are gender-biased epithets, stating in her memorandum: "One just ask [sic], would Martin refer to a man as a 'ball buster.' Of course not." (*Plaintiff's Response to Defendant's Motion,* at 5). This, without more does not support plaintiff's claim. In *Galloway,* for example, the court found that the epithet "bitch" was not inherently sex-

ual. 78 F.3d at 1168. Martin's alleged use of "ball-buster" is certainly no more inherently sexual than "bitch," and it is apparent from the record that it evinced a personal dislike as opposed to a gender bias.

Plaintiff does not take the trouble to support her assertion that "ball-buster" is invariably used to refer to women. That is certainly fatal to plaintiff's claim, but, actually, there are numerous examples in cases where the term or variations thereon is used to refer to men. *United States v. Enigwe,* 155 F.Supp.2d 365, 376 (E.D.Pa. 2001); *Abramowitz v. Inta–Boro Acres Inc.,* 64 F.Supp.2d 166, 169 (E.D.N.Y. 1999); *People v. Cortijo,* 179 Misc.2d 178, 684 N.Y.S.2d 435, 438 (1998). Certainly, even a passing familiarity with the lexicon of "wise guy" literature and film would disabuse plaintiff of this notion, as the term is *rarely* used to refer to a woman. Far from a sexual reference, it merely connotes that someone is causing more than a tolerable share of grief.

### c. nude photographs

In a bit of disingenuousness, plaintiff states that Martin asked to see her naked. That is quite different in degree from what plaintiff testified to at her deposition. According to that testimony, at a bar after work, when plaintiff mentioned that she had done some nude modeling, Martin purportedly said he would like to see a photo. The court will admit that this is the only arguably gender-related comment among those plaintiff cites as examples of harassment. As noted above, however, the social context of a remark must be considered. *Oncale,* 523 U.S. at 82, 118 S.Ct. at 1003; *Hilt–Dyson,* 282 F.3d at 463. Here, the plaintiff and Martin were out drinking after work with a group from the office and plaintiff volunteered the information regarding her nude photos. According to plaintiff, the photos are on display in a

gallery, so anyone can see them. (*Deposition of Marting*, at 197). These factors certainly take the alleged request out of the realm of sexual harassment. *See Pryor v. Seyfarth, Shaw, Fairweather & Geraldson*, 212 F.3d 976, 977–78 (7th Cir. 2000) (workplace request to see provocative photos of plaintiff not sexual harassment); *Baskerville v. Culligan Intern. Co.*, 50 F.3d 428, 430–31 (7th Cir.1995) (workplace remark that "all pretty girls should run around naked," along with similar remarks, not sexual harassment); *Gleason v. Mesirow Financial, Inc.*, 118 F.3d 1134, 1145 (7th Cir.1997) (nudism not sexual *per se* ).

### d. "oh, you skinny people" and home phone calls

Martin purportedly called plaintiff "skinny" and, for some reason, plaintiff adds to her list of instances of sexual harassment. Plaintiff does not give us an inkling as to how this comment might have been a product of gender bias, other than to suggest it was a comment on her "physique." Even as plaintiff characterizes the comment, it is a reference to *all* skinny people, as opposed to skinny females.

In addition, plaintiff complains that Martin called her at home on two occasions. The calls were apparently work-related. Plaintiff does not suggest there was a gender-bias or a "stalking" element to the calls. Neither the "skinny" remark nor the two phone calls support plaintiff claim of sexual harassment.[7]

### 2. *Retaliation*

 Plaintiff contends that defendant transferred her to Kenosha in retaliation for her complaints to Garlough about Martin. (*Plaintiff's Response to Defendant's Motion*, at 5–6). Title VII prohibits an employer from retaliating against an employee who has "opposed any practice made an unlawful employment practice by this subchapter or ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing" under the statute. *See* 42 U.S.C. § 2000e–3(a). To demonstrate that an employer has violated this provision of Title VII, an employee may present either direct or indirect evidence of the employer's retaliatory intent. Direct evidence frequently does not exist in these cases, however, and most plaintiffs attempt to satisfy their burden through the indirect method of proof. A plaintiff employing the indirect method must first present evidence sufficient to establish a *prima facie* case that: (1) she engaged in statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite meeting her employer's legitimate expectations, she suffered a materially adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Hilt–Dyson*, 282 F.3d at 465. If a plaintiff succeeds in establishing a *prima facie* case, the employer must offer a legitimate, noninvidious reason for the adverse employment action. *Id.* If the employer does so, the burden of production shifts back to the plaintiff to demonstrate the pretextual nature of the proffered reason. *Id.* At this point, if the employee fails to establish pretext, her retaliation claim cannot survive summary judgment. In this case, plaintiff follows the indirect method in attempting to support her claim. She argues that once she complained to Garlough about Martin, she was subjected to the adverse employment action of a transfer to Kenosha and was given the lowest

---

7. Plaintiff's complaints that Martin said she was "a pain in the neck" and boasted that he was "good at lying" are so far removed from any sexual connotation, real or imagined, that they do not merit comment.

job rating of her tenure. (*Plaintiff's Response to Defendant's Motion,* at 5–7). Review of the record, however, demonstrates she cannot establish a *prima facie* case. The first element of the *prima facie* case requires that plaintiff oppose conduct prohibited by Title VII, or at a minimum, that she had a reasonable belief that she was challenging such conduct. *Hamner v. St. Vincent Hosp. and Health Care Center, Inc.,* 224 F.3d 701, 706–707 (7th Cir. 2000). The court in *Hamner* explained:

That means, for example, that even if the degree of discrimination does not reach a level where it affects the terms and conditions of employment, if the employee complains and the employer fires him because of the complaint, the retaliation claim could still be valid. But the complaint must involve discrimination that is prohibited by Title VII. The plaintiff must not only have a subjective (sincere, good faith) belief that he opposed an unlawful practice; his belief must also be objectively reasonable, which means that the complaint must involve discrimination that is prohibited by Title VII.

224 F.3d at 706–707. Here according to plaintiff's own testimony, she believed Martin was getting back at her for the cell phone argument; that was the subject of her discussion with Garlough. (*Pl. St.,* ¶ 189; *Deposition of Marting,* at 156). This is evidence, not of plaintiff having a subjective belief that she was opposing sexual harassment or discrimination, but that she felt she was complaining about a personal problem she had with her supervisor.

 Moreover, the record also fails to show that plaintiff's complaint to Garlough concerned conduct which violated Title VII from an objective standpoint. Again, according to plaintiff's testimony, she complained that she was "being picked on" and that her phone charges were being

unfairly scrutinized-as opposed to three of her co-workers, one of whom, Julie Berns, was female. It is not objectively reasonable to believe that being picked on or being treated unfairly compared to both men and women are Title VII violations. While a plaintiff need not use the phrases "sexual harassment" or "sexual discrimination," she must "say something to indicate her [gender] is an issue." *Miller v. American Family Mut. Ins. Co.,* 203 F.3d 997, 1007–08 (7th Cir.2000). In *Liner v. Dontron, Inc.,* 9 Fed.Appx. 523 (7th Cir.2001) for example, the plaintiff-not unlike the plaintiff here-complained about commission deductions and her supervisor's harsh language, but the court found this was not "statutorily protected conduct" under Title VII. 9 Fed.Appx. at 529–530 (7th Cir.2001) 2001 WL 548974, *5. Accordingly, we find plaintiff has not raised a triable issue as the first element of a *prima facie* case from either an objective or a subjective standpoint.

 Plaintiff has also failed to make an adequate evidentiary showing as to the third element of the *prima facie* case, that she suffered an adverse employment action. She claims to have suffered adverse employment actions by being transferred to Kenosha-which required a significantly longer commute-and receiving a poor performance review. While an adverse employment action is not limited solely to loss or reduction of pay or monetary benefits, "not everything that makes an employee unhappy is an actionable adverse action." *Stutler v. Illinois Dept. of Corrections,* 263 F.3d 698, 703 (7th Cir. 2001). To be actionable, there must be a " 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.' " *Stutler,* 263 F.3d at 703(quoting *Bell v. Envtl. Prot. Agency,* 232 F.3d 546, 555 (7th Cir.2000)). In other words, the adverse action must

materially alter the terms and conditions of employment. *Stutler*, 263 F.3d at 703. Negative performance reviews, a change in job title, an increased travel distance to work, do not by themselves qualify. *Stutler*, 263 F.3d at 703; *Hill v. Am. Gen. Fin., Inc.*, 218 F.3d 639, 645 (7th Cir.2000). These are exactly the actions of which plaintiff complains here.

We note that plaintiff seems to tie both her assignment to Kenosha and her performance review to a loss of salary, albeit without much development. The performance review, according to plaintiff, "reduc[ed] her futurity rating, which was directly related to her compensation" and "also had a direct impact on her annual raise." (*Plaintiff's Response to Defendant's Motion*, at 3, 8). To support this claim, plaintiff relies on her deposition testimony and some of her hand-written notes. (*Id. citing Pl.St.*, ¶ 201). Neither the cited testimony nor the notes, however, mention loss in salary: the testimony details events regarding a mislaid file; the notes describe those events and catalog some of Martin's remarks. (*Deposition of Marting*, at 202–205; *Dep. Ex.* 15). Plaintiff admits that, despite her low performance rating, she nevertheless received a bonus. (*Pl. Resp.*, at ¶ 48). She also admits that she received a salary increase. (*Pl.Resp.*, at ¶ 93). In addition, plaintiff seems to suggest that the Kenosha assignment adversely affected her compensation as well, because she could not meet "the all important quota of billing 10.5 hours per day." (*Plaintiff's Response to Defendant's Motion*, at 4). Again, however, she provides no evidence that her earnings were cut as a result of the reassignment. Her performance rating and her inability to meet the quota may have reduced her compensation, but we have no way of

knowing that. It is incumbent upon plaintiff to go beyond her allegations and offer evidence to support her claims at the summary judgment stage of the case. Accordingly, we cannot find the problems of which plaintiff complains—a bad performance review and an increased commute for three months—constitute adverse employment actions.

### 3. *Sexual Discrimination*

■ Plaintiff also adds a claim for sexual discrimination under Title VII. This claim is somewhat difficult to grasp as it entails much of what plaintiff characterized as harassment or retaliation in her other Title VII claims. While Title VII imposes liability for discrimination *and* retaliation, these are separate wrongs, and must be argued as such. *Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 809–10 (7th Cir.2001); *Heuer v. Weil–McLain*, 203 F.3d 1021, 1022–23 (7th Cir.2000). Plaintiff cannot argue that the conduct of which she complains was motivated by gender bias under one theory, then claim the same conduct was in retaliation for her complaints of sexual harassment. *Berry,* 260 F.3d at 809–10; *Heuer*, 203 F.3d at 1022–23. This casts considerable doubt on the viability of plaintiff's contentions but, nevertheless, we will review plaintiff's submissions regarding her discrimination claim.

■ Plaintiff's chief complaint would appear to be that her bad performance rating adversely affected her eligibility for a bonus and salary increase, although she also complains of the "hit in the pocketbook" and "ball-busting" comments and her transfer to Kenosha. (*Plaintiff's Response to Defendant's Motion*, at 7–10). In order to survive summary judgment, plaintiff must support her claim with direct evidence [8], or through the

---

8. Under the direct method of proof, plaintiff must show either an acknowledgment of discriminatory intent by the defendant or circumstantial evidence that provides a basis for an inference of intentional discrimination. *Gorence v. Eagle Food Centers, Inc.*, 242 F.3d

familiar *McDonnell Douglas* burden-shifting, indirect method. *Brummett v. Lee Enterprises, Inc.,* 284 F.3d 742, 744 (7th Cir.2002); *Curry v. Menard, Inc.,* 270 F.3d 473, 477 (7th Cir.2001). The *prima facie* test under *McDonnell Douglas* requires the plaintiff to establish that: (1) she belongs to a protected class; 2) her performance met her employer's legitimate expectations; 3) she suffered an adverse employment action; and 4) similarly situated others not in her protected class received more favorable treatment. *Brummett,* 284 F.3d at 744. In this case, plaintiff fails to establish the second, third, and fourth elements of the *prima facie* case.

 As there is no dispute that plaintiff is a member of a protected class, we begin with the second element: that plaintiff's performance met defendant's expectations. Plaintiff finds fault with the performance rating Martin gave her, calling it the lowest she ever received while working for defendant. (*Plaintiff's Response to Defendant's Motion,* at 4,7). That may well be, but the issue is whether it was deserved. Again, we are hard-pressed to find evidence-or even factual assertions-that would ward off summary judgment as to this element of plaintiff's claim. Plaintiff makes factual assertions regarding her opinion that Martin should have consulted her Kenosha supervisor regarding her performance, whether Martin properly took her vacation time into consideration, and that she disagreed with Martin's assessment. (*Pl.St.,* ¶¶ 216–219).

There is nothing, however, regarding her performance and whether it was meeting defendant's expectations at the time. *See Fortier v. Ameritech Mobile Communications, Inc.,* 161 F.3d 1106, 1113 (7th Cir.1998)(relevant time to consider is time of adverse employment action). Plaintiff also claims it was impossible for her to meet the billing quota of 10.5 hours a day while on the Kenosha assignment. This court's inquiry into the issue of legitimate expectations, however, is somewhat limited as it is no business of a court in a discrimination case to decide whether an employer demands "too much" of its workers. *Robin v. Espo Engineering Corp.,* 200 F.3d 1081, 1090 (7th Cir.2000). In any event, defendant's adjusters were allowed to bill certain tasks at flat rates, which would undermine plaintiff's claim regarding fraud. Furthermore, plaintiff admits that prior to the Kenosha assignment, she was billing just four to five hours a day. (*Pl.Resp.,* ¶ 65). In short, rather than put forth evidence on this issue to ward off summary judgment, plaintiff leaves us to speculate as to her performance.

Turning to the third element of the *prima facie* case, adverse employment action, we can return to our Title VII retaliation discussion. Plaintiff has not provided any support for her claim that she suffered an adverse employment action. As already stated, *supra* at 970–71, the actions of which plaintiff complains—negative performance reviews or an increased travel distance to work—do not by themselves qualify. *Stutler,* 263 F.3d at 703; *Hill,* 218

759, 762 (7th Cir.2001). Plaintiff contends that Martin's "pocketbook" threat constitutes direct evidence of discrimination. (*Plaintiff's Response to Defendant's Motion,* at 7–8). There are a few problems with plaintiff's reliance on Martin's threat. First, as discussed at length, *supra,* the record demonstrates that the remark was motivated by the argument over the cell phone, as opposed to gender bias. Second, according to plaintiff, her

transfer and poor performance rating were retaliation for that argument. This was not the type of comment that would put one on notice of a supervisor's bigotry. If plaintiff wishes to rely on comments as direct evidence of discriminatory intent, they must be of a derogatory character. *See Gorence,* 242 F.3d at 762. Here, Martin's threat was neither gender-biased, nor did plaintiff understand it as such.

F.3d at 645. Without more evidence-which plaintiff fails to identify or provide-plaintiff cannot survive summary judgement on the third element of the *prima facie* case.

 The fourth and final element of the *prima facie* case requires plaintiff to show that others not in her protected class who were similarly situated received more favorable treatment than she did. To meet her burden of demonstrating that another employee is "similarly situated," a plaintiff must show that there is someone who is directly comparable to her in all material respects. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir.2002). The court must look at all relevant factors, such as whether the employees had comparable "experience, education and qualifications," provided that the employer took these factors into account when making the personnel decision in question, the number of which depends on the context of the case. *Patterson*, 281 F.3d at 680. In this case, the court's analysis is thwarted because plaintiff does not mention, in her brief, who might be a similarly situated male whom defendant treated more favorably. (*Plaintiff's Response to Defendant's Motion*, at 7–10). As the court is not responsible for making plaintiff's arguments for her, *Brasic*, 121 F.3d at 285, we can find she has failed to adequately support this element of the *prima facie* case as well. We will, however, speculate that, based on her deposition testimony, plaintiff might suggest that she be compared with Ron Sturek in terms of performance rating and the Kenosha assignment. Sturek, however, had different experience than plaintiff-heavy products liability-that counseled against his reassignment to Kenosha. *See Patterson*, 281 F.3d at 680 (additional experience makes it next to impossible to conclude employees are similarly situated). In addition, there is no evidence, other than hearsay, that Sturek was treated differently in his performance review. In addition, plaintiff admits that at least one other employee-Lear, a male-received a poor rating. (*Pl.Resp.*, ¶¶ 57–58). In fact, for the last quarter of 1999, Martin felt that "none of the adjusters was doing very good work." (*Def.St.* ¶ 48). Even under a very lenient view, which looks beyond plaintiff's submissions in this matter, it is clear that plaintiff has no support for this element of the *prima facie* case. Accordingly, we must find that defendant is entitled to summary judgment on plaintiff's Title VII sexual discrimination claim.

## III. *CONCLUSION*

The courts of this district and the Seventh Circuit often state that we do not sit as "super personnel departments that second-guess[ ] employers' business judgments." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir.2002). The quote is less than accurate for, in many cases, the court is essentially called upon to do just that. We have done it here. This case is about two employees who were unable to get along during the rather brief-two months-period that they worked together. Their work relationship began with an argument—that plaintiff started—over a work-related matter, and never improved. We have no doubt that plaintiff's supervisor genuinely disliked her. To a somewhat sensitive person, some of his language was perhaps a bit coarse. It may well be that her performance review and reassignment to Kenosha were unfair. None of these things are the same as sexual harassment, sexual discrimination, or retaliation. The fact that plaintiff has no case is betrayed by the exaggerations and disingenuous characterizations to be found in her statement of "facts." There is simply no fire here, and hardly any smoke. The record constrains us to find that the defendant is entitled to summary judgment on the plaintiff's complaint.

**974**

For the foregoing reasons, the defendant's motion for summary judgment is GRANTED. Costs will be awarded to defendant from plaintiff.